**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

POP CINEMA, LLC,

Plaintiff,

-against-

FIRST LOOK HOME ENTERTAINMENT, INC.,

Defendant.

---------------------------------------------------------------x

Index No. 08 CV 3792

**ELECTRONICALLY FILED**

**EXHIBITS TO DEFENDANT'S ANSWER AND COUNTERCLAIM**

Dated: New York, New York
June 13, 2008

William R. Horner, Esq.
Attorney for Defendant
551 Fifth Avenue – Suite 616
New York, New York 10176
(212) 252-1165



# EXCLUSIVE FINISHED GOODS DISTRIBUTION AGREEMENT

THIS EXCLUSIVE FINISHED GOODS DISTRIBUTION AGREEMENT ("**Agreement**") is made and entered into as of this 28th day of July 2006 and effective as of the 21st day of March, 2006 ("Effective Date"), by and between FIRST LOOK HOME ENTERTAINMENT, INC., a California corporation ("**FLHE**"), and POP CINEMA LLC, a New Jersey corporation ("**Pop**").

The parties hereby agree as follows:

1. **BASIC TERMS, PROVISIONS & DEFINITIONS.**

1.1 "**Programs**" will mean the titles listed on **Exhibit A**, attached hereto and incorporated herein by this reference.

(a) "**Distribution Term**" will mean the term ("Term") commencing on the Effective Date and continuing through July 27, 2009. The Term shall automatically renew for successive two (2) year periods unless either party elects to cancel this Agreement by providing a ninety (90) day written notification to the other party prior to the end of the then current term. All unfilled orders pending at the time of the date of such notice of termination shall be deemed canceled, and Pop and FLHE hereby waive all claims against the other in connection with the cancellation of such orders.

1.2 "**Territory**" will mean, with respect to each Program, the United States and its respective territories, possessions, commonwealths, trusteeships and military and civilian installations.

1.3 "**Formats**" will mean, with respect to each Program:

(a) "**Home Video Formats**" All video formats whether now known or hereinafter devised, including but not limited to, VHS, Digital VHS, HDTV-VHS,DVD, Blu-Ray, HD-DVD, DVD-ROM, CD-ROM, UMD and all other forms of home video programming.

1.4 "**Finished Goods Units**" will mean, with respect to each of the Programs, the product units of the Programs delivered to FLHE pursuant to the terms of this Agreement.

1.5 "**Street Date**" will mean, with respect to each Program, the date on which the Program is first released (i.e., the date the Program is first available to the consumer in the Home Video Format for retail purchase (the street date)) by FLHE under this Agreement.

1.6 "**Purchase Price**" will mean Sixty Percent (60%) off the Suggested Retail Price ("SRP") for each Program.

1.7 "**Net Proceeds**" will mean Purchase Price less the following charges incurred prior to the close of the applicable accounting period:

(a) Any and all direct costs, which shall mean mandatory merchandising fees, slotting fees, Best Buy Mosaic charges, Best Buy rebates, customer return fees and other sales discount charges imposed upon FLHE, warehousing/pick pack and ship fees and returns processing fees. FLHE shall provide direct cost information upon request and

(b) One Hundred Percent (100%) of returns during the applicable period.



2. **CONSIDERATION & OBLIGATIONS.**

2.1 **Signing Bonus.** In consideration for Pop entering into this Agreement, FLHE shall pay Pop a one time non-recoupable payment of One Hundred Thousand Dollars ($100,000) (the "Signing Bonus"), payable within ten (10) days of the full execution of this Agreement. The Signing Bonus shall not offset any future amounts owed by FLHE hereunder.

2.3 **Net Proceeds Payments:** FLHE will pay Pop One Hundred Percent (100%) of Net Proceeds attributable to each Program Net Proceeds Payments shall be paid Ninety (90) days after FLHE's receipt of the Programs ordered from Pop and the related invoice.

2.4 **Purchase Orders**. FLHE shall, in its sole discretion (except as set forth herein) issue the purchase orders necessary to complete its sale and distribution of the Programs in accordance with this Agreement. Within ten (10) days of notification of such purchase orders, Pop shall ship to FLHE the Finished Goods Units of those Programs required to fulfill FLHE's obligations, which shall be warehoused by FLHE or a third party as designated by FLHE in its sole discretion. FLHE shall indemnify Pop for damage or loss suffered by Pop as a result of FLHE's failure to properly warehouse the Finished Goods Units. FLHE shall also be solely responsible for the loss of, or damage to, any Finished Goods Units from the time it receives shipment from Pop until Pop receives payment from FLHE for such Finished Goods Units. During the Term and until such time as all unsold Finished goods Units are returned to Pop, FLHE shall obtain and retain liability insurance sufficient to cover the loss or damage to the Finished Goods at a price commensurate with each lost or damaged Unit's cost of manufacture and packaging, and shall furnish Pop with written documentation of such insurance coverage upon Pop's request.

FLHE warrants that any and all Programs that were shipped to its prior distributor, ~~FLHE~~ Ventura Distribution, Inc. ("VDI") prior to the execution of this Agreement and throughout the term of the previous agreement between Pop and VDI (dated April 1, 2001), and since "returned" to FLHE and to VDI from their retail customers, will be "reworked" and put back into FLHE's inventory without any "reworking" and/or "restocking" and/or "refurbishing" and/or "handling" fees being charged to Pop nor any Programs returned for credit to Pop. Pop in its reasonable discretion will consult with FLHE regarding which Programs Pop will take back into its inventory. FLHE agrees that the costs associated with shipping said Programs to Pop will be at FLHE's sole expense.

Upon termination of this Agreement, any unsold Finished Goods Units shall be returned to Pop and Pop shall issue FLHE a credit for all Finished Goods Units returned to it by FLHE for which Pop had previously received payment from FLHE. Pop shall not issue a credit for any Finished Goods Units returned to it for which it had not previously been paid, including but not limited to any Finished Goods Units warehoused by FLHE (or its designated third party) not shipped to the customer and/or Finished Goods Units returned to FLHE from the customers for which the dollar amounts of such Finished Goods Units were subsequently debited from Receipts on the applicable accounting statements.

Pop shall prepay all shipping and freight charges for any items and Finished Goods Units sent to FLHE and shall comply with FLHE's delivery requirements pursuant to Exhibit B, attached hereto and incorporated herein by this reference. FLHE shall pay all shipping and freight charges for any items or Finished Goods Units returned to Pop.

2.5 **Purchase Order Consultation.** To the extent practicable, FLHE shall consult with Pop prior to placing any purchase orders to supply the Programs to its customers in order to accurately estimate the amount of each Program it should supply, and shall make a good faith effort not to order more Finished Goods Units of a Program than can reasonably be expected to be sold. The parties shall mutually decide whether FLHE shall supply Programs to the mass merchants, including but not limited to Sam's Club, and



other discount clubs, Wal-Mart, Target, and supermarkets. For clarification FLHE has the exclusive right to distribute to these mass merchant accounts.The decision to supply these accounts under this Paragraph is solely related to whether or not the mass merchants orders are a reasonable (i.e., not excessive) number, as determined in the mutual discretion of FLHE and Pop.

2.6 **Creative and Marketing Services**. At Pop's option and FLHE's agreement thereto, FLHE shall provide creative and marketing services to Pop. If Pop requests such services, FLHE shall charge back to Pop, FLHE's actual out-of-pocket costs for such services plus the following additional costs: (i) Ten Percent (10%) of actual out-of-pocket costs for creative services; and (ii) Fifteen Percent (15%) of actual out-of-pocket costs for marketing services. These charges shall be debited as a charge back to Pop.

2.7 FLHE makes no warranty or representation as to the amount of monies which may be eamed by Pop hereunder. However, FLHE shall use commercially reasonable efforts to sell the Finished Goods Units.

3. **EXCLUSIVE GRANT OF RIGHTS**. Pop hereby grants to FLHE, solely and exclusively, throughout the Territory and during the Distribution Term all the necessary rights for FLHE to promote, market and sell, and otherwise exploit the Programs in any or all of the Formats by any means determined by FLHE in its sole discretion (including, without limitation, mail order, catalog, club/subscription service sales, rental sales (to be detailed in an amendment hereto) and Columbia House). All rights not specifically granted to FLHE hereunder are expressly reserved by Pop. Specifically, FLHE shall not sell or distribute to those customers/retailers listed on Exhibit C, attached hereto and incorporated herein by this reference.

4. **REPRESENTATIONS AND WARRANTIES.**

4.1 Pop represents and warrants as follows:

(a) It has full right, power and authority to enter into and perform this Agreement and to grant to FLHE all of the rights herein granted, and will continue during the Distribution Term to possess such right, power and authority.

(b) All of the following have been, or will be, fully paid or discharged by Pop:

(i) all claims and rights of owners of copyrights in the Programs and in the literary, dramatic, musical or other material appearing, used or recorded in the Programs (including, without limitation, any and all guild and union payments which may be or become due) and

(ii) all claims and rights of any persons, firms or entities with respect to the use, distribution, performance, and exploitation of the Programs, and any music contained therein.

(c) Neither the Programs nor any part thereof, nor any materials contained therein or synchronized therewith, nor the exercise by FLHE of any right herein granted, violates or will violate, or infringes or will infringe, any trademark, trade name, contract, agreement, license, copyright (whether common law or statutory), patent, literary, artistic, dramatic, personal, private, civil or property right, or right of privacy or any law or regulation or other right whatsoever, or slanders or libels, any person, firm, corporation or association whatsoever.

(d) It has not sold, assigned, transferred or conveyed, and will not sell, assign, transfer or convey, to any party, any right, title or interest in and to the Programs or any part thereof adverse to or in derogation of the rights granted to FLHE, and further, Pop

expressly acknowledges and agrees that it has not and will not authorize any person, firm or entity other than FLHE to promote, market, sell, distribute or exploit the Programs in the Home Video Formats in the Territory during the Distribution Term.

(e) It has obtained appropriate releases from all persons appearing in or performing services in connection with the Programs. All persons appearing in the nude, topless or engaging in sexual conduct are older than eighteen (18) years of age. The Programs have been produced and records kept in accordance with, and the Programs contain the appropriate notices required by, the Child Protection Restoration and Penalties Enforcement Act of 1990 and any amendments thereto.

(f) All Elements required to be delivered under Paragraph 6 are, or will be made, available to FLHE pursuant to all of the terms and conditions of Paragraph 6 and the synopses, copyright, credit and other written information required to be delivered under Paragraph 6 and further described in SCHEDULE 1 of this Agreement must be true, accurate and correct in all respects.

4.2 FLHE represents and warrants it has full right, power and authority to enter into and perform this Agreement and will continue during the Distribution Term to possess such right, power and authority.

4.3 The representations and warranties set forth in this Paragraph 4 will survive the termination of this Agreement.

5. **INDEMNIFICATION.** Pop and FLHE hereby indemnify, defend and hold the other, and their respective subsidiaries, affiliates, licensees, agents, officers, directors and employees harmless from and against any and all demands, claims, actions or causes of action, assessments, liabilities, judgments, damages, losses, costs or expenses whatsoever (including reasonable attorneys' fees of outside counsel of indemnitee's choice incurred (a) in connection therewith (which will also include costs and expenses incurred in investigating, preparing or defending against any action, suit, proceeding or investigation, commenced or threatened) and (b) in seeking indemnification therefore), which may be sustained, incurred or suffered by, or secured against, the indemnitee, or any of its subsidiaries, affiliates, licensees, agents, officers, directors or employees, by reason of, or arising out of, a breach by the indemnitor of any of the representations, warranties, covenants or agreements contained herein, or in the exercise by FLHE of any of the rights, licenses or privileges granted hereunder. Promptly after learning of the occurrence of any event which may give rise to its rights under the provisions of this Paragraph 5, the indemnitee shall give written notice of such matter to the indemnitor. The indemnitee shall cooperate with the indemnitor in the negotiation, compromise and defense of any matter. The indemnitor shall be in charge of and control such negotiations, compromise and defense and shall have the right to select counsel with respect thereto, provided that the indemnitor shall promptly notify the indemnitee of all developments in the matter. In no event shall the indemnitee compromise or settle any such matter without the prior written consent of the indemnitor, and the indemnitor shall not be bound by any such compromise or settlement absent its prior written consent. This Paragraph 5 will survive the termination of this Agreement.

6. **ADDITIONAL REPRESENTATIONS OF POP AND DELIVERY OF PROOF OF INSURANCE.**

6.1 Pop hereby represents that it possesses the following materials:

(a) Copies of all music publishing rights and clearance agreements or director/composer agreements).



(b) Music cue sheets for the Programs, which must include complete song titles, the music publisher(s), song run-times and all appropriate credits, including the complete names of the performing artists, songwriters and composers.

(c) The completed packaging files uncomposed and as a high-resolution file at 300 dpi accompanied by a printed sleeve sample.

(d) A complete statement setting forth the names of all persons to whom Pop is contractually obligated to accord credit in any advertising, publicity or exploitation of the Programs and to include in such statement excerpts from such agreements defining and describing the form and nature of such required credits.

(e) Chain of title verification in and to the Programs including all talent releases.

(f) Errors & Omission Insurance (One Million ($1,000,000) each occurrence/Three Million ($3,000,000) in the aggregate) secured in the name of Pop, including certificate of insurance naming FLHE as an additional insured for the term of the Agreement (Pop shall provide evidence of Errors & Omission Insurance to FLHE).

6.2 With respect to each item specified in Paragraph 6.1 above, Pop will advise FLHE of any change which materially affects Pop's representations as set forth above.

7. **SALES, ADVERTISING & PROMOTION.**

7.1 FLHE may include FLHE's name, trademark and video logo and a statement to the effect that FLHE is the exclusive FLHE of the Programs on all advertising and publicity relating to the Programs, in such manner, position, size, form and substance as FLHE may elect.

7.2 FLHE has the right (subject only to such limitations as may be contained in Pop's contracts with such persons, provided such limitations are delivered in writing to FLHE upon full execution of this Agreement) to issue and authorize publicity and to use, broadcast and publicize, in connection with the distribution and exploitation of the Programs the names, photographs, likenesses, voices and other sound effects of all members of the cast and any other persons connected with the Programs.

7.3 FLHE has the right to produce or reproduce such art work and photographs pertaining to the Programs as FLHE will deem necessary for the advertising, promotion and exploitation of the Units.

7.4 FLHE has the right to promote the Programs, directly or indirectly, via transmission of Program excerpts , where each such excerpt will not exceed two (2) minutes in duration, by means of broadcast television, cable, radio, and the Internet (including streaming and digital-download), or by other means of electronic or digital commerce, whether now known or hereafter devised.

7.5 Amounts related to the costs for advertising and merchandising for industry trade advertising, marketing support, including trade shows, and customer co-op advertising and market development funds ("MDF") (collectively referred to as the "Advertising Accrual") are subject to the prior written approval of Pop, which shall not be unreasonably withheld or delayed"

7.6 Notwithstanding anything contained herein to the contrary, FLHE has the right to market, sell, distribute, sublicense and/or otherwise exploit the Programs and Finished Goods Units

and any and all of the rights granted hereunder, directly or indirectly, in accordance with such terms as it may, in its reasonable business judgment determine.

8. **SCREENERS**. Pop shall provide, at its expense, a minimum of seventy-five (75) screeners of each Program to FLHE, and additional screeners as reasonably required. These Programs shall be used only as promotional "screeners" and sent for the sole purpose of assisting FLHE's dealers and clients in making their purchase decisions.

9. **SALES AND ACCOUNTING STATEMENTS**

9.1 **Monthly Sales Statements**. FLHE will render to Pop a statement of sales activity on a monthly basis (the "Accounting Period"), which will be sent to Pop at the address set forth herein.

9.2 **Returns**. FLHE shall have the right during and at any time after the Term of this agreement to return to Pop for full credit Finished Goods Units in FLHE's inventory (specifically including but not limited to, either Overstock Finished Goods Units or Returned Finished Goods Units warehoused at FLHE, or a FLHE-authorized third party) for which Pop has already been paid, but only after FLHE has used commercially reasonable efforts to distribute the Overstock and/or Returned Units to other retail customers before attempting to return the Units to Pop as described hereunder. However, returns from FLHE to Pop during each calendar quarter shall be limited to 25% of the current on-hand inventory held by FLHE. At the end of each calendar year, there shall be an annual inventory clean up where FLHE shall be able to return any excess inventory at that time for full credit. To cover this quarterly 25% returns allowance, FLHE shall be entitled to hold a returns reserve of 25% on a quarterly basis, to be liquidated the following quarter.

Pop shall provide an appropriate return authorization ("RA") with respect to all Finished Goods Units "returning" to Pop pursuant to this Section 9.2. Pop shall not issue a credit for any "returning" Finished Goods Units for which it had not been previously paid, or for any "returning" Finished Goods Units returned to FLHE from retail customers whose purchase costs have already been deducted from applicable statements and payments due Pop. If Pop does not issue a RA within fourteen (14) calendar days from FLHE's request for returns, as said request is dictated by the conditions outlined herein, then the Finished Goods Units will be returned to Pop with the RA number #1234VENTDIST APPROVED, and Pop shall provide a full credit to FLHE and issue a refund payment to FLHE within thirty (30) days of Pop's receipt of the Finished Goods Units.

10. **DEDUCTIONS.**

10.1 Credits for authorized product returns, the Advertising Accrual, Pop-authorized customer rebates, Pop-authorized FLHE's sales incentives, Pop-authorized dealer penalties or other Pop-authorized credits provided for by this Agreement will be handled by the issuance of charge backs by FLHE and the issuance or a credit memo by Pop. Credit balances (including deficit amounts reflected on any accounting statement) without pending orders are payable by Pop within sixty (60) days of demand by FLHE. Notwithstanding the foregoing, FLHE shall have the right to deduct from any and all payments made to Pop any charges and fees related to merchandising fees, slotting fees, Mosaic charges, Best Buy rebates, customer return fees and other sales discount charges imposed upon FLHE, provided that all costs, other than direct costs, have been authorized in writing by Pop.

11. **ACCOUNTING RECORDS AND AUDIT RIGHTS**. FLHE will keep full and complete records of all transactions relating to the Programs. No more frequently than once per each year of the

Distribution Term, and upon reasonable notice, Pop may, at its own expense, audit FLHE's records in order to verify earnings statements rendered hereunder. Any such audit will be conducted at FLHE's corporate headquarters or such other location as FLHE shall deem pertinent records are housed and shall be conducted by a certified public accountant (which such certified public accountant shall be subject to FLHE's approval) upon reasonable notice to FLHE and during FLHE's normal business hours. Any statement not questioned by Pop by notice in writing within two (2) years from the date of such statement will be deemed final and conclusive. Pop's right to examine FLHE's records will be limited to only those books, records and accounts applicable and relevant to this Agreement.

12. **DEFAULT**. In the event either party should violate any of the material terms and conditions of this Agreement and such default will remain uncured for a period of thirty (30) days after written notice has been delivered to the defaulting party, then in such event the other party will have the right to terminate all or any part of this Agreement by delivering written notice to the defaulting party of its intention to terminate. In the event Pop is in breach of the representations and warranties given in Paragraph 4, FLHE will have the right to immediately terminate this Agreement and Pop and/or Pop will be required to immediately reimburse FLHE for any and all of its actual out-of-pocket costs and expenses incurred in connection with the Programs.

13. **TERMINATION.**

13.1 Either party may terminate this agreement not less than sixty (60) days after written notice in the event of a material breach by the other party, and the failure of such other party to cure such breach within thirty (30) days of such notification. Subject to Paragraph 2.4 of this Agreement, FLHE shall have the right after the expiration or the termination of this Agreement for any reason, to return to Pop all or a portion of the Programs in FLHE's inventory for full credit.

13.2. Upon termination or expiration of this agreement, Pop will endeavor to appoint a new Bona Fide Distributor which Distributor must assume distribution and full returns responsibility immediately upon commencement of its distribution for all Pop Programs. Pop will provide FLHE with a returns assumption letter from Pop's new Distributor to that effect and Pop represents that the new Distributor will furnish such letter to all accounts. This letter will state that the new Distributor unconditionally agrees to accept all Pop Product returns from accounts immediately, excluding deleted titles which are still returnable as per FLHE's deletion notice(s).

13.3 For purposes of this agreement, "Bona Fide Distributor" is defined as any established (as opposed to "in formation" or "start-up") national Distributor which is recognized by all of FLHE's top accounts as a full-service video Distributor for Pop Programs and, provided such Distributor's returns assumption for Pop Programs is accepted by FLHE's top accounts, and FLHE is relieved from returns responsibility for Pop Programs. Both parties understand that despite such returns assumption of the new Distributor, FLHE may be forced to process returns "in transit" after termination that are in FLHE's returns center or were sent to FLHE due to prior authorization. Pop assumes sole responsibility for returns "in transit" and any other returns FLHE processes, including but not limited to returns FLHE will continue to receive from accounts that are not serviced by the new Distributor. Pop will hold FLHE free and clear of all Pop Product returns upon termination and will reimburse FLHE in the amount of the dealer credit for all returns FLHE receives and processes after termination.

13.4 FLHE will deliver all of its inventory from to Pop within thirty (30) days after termination, including returns thereafter received by FLHE for full credit to FLHE, subject to Paragraph 2.4 herein. If Pop refuses delivery of such inventory, Pop irrevocably authorizes FLHE to



scrap such inventory, with the cost of scrapping to be borne by Pop. FLHE will inform Pop in writing of FLHE's intention to scrap such inventory five (5) days prior to taking such action. Notwithstanding, FLHE is entitled to withhold Pop's inventory and/or liquidate the inventory at discounted or cut-out prices, if a current balance is due FLHE or if the balance due Pop is insufficient to cover FLHE's returns exposure.

13.5 Notwithstanding anything to the contrary set forth in this Agreement, FLHE is entitled to withhold reasonable reserves against creditable returns or other sums payable by Pop to FLHE upon termination or expiration of this agreement. It is agreed that FLHE may retain the entire balance due Pop upon termination, if Pop does not provide a full returns assumption from a Bona Fide Distributor. Should the balance due Pop not exceed fifty per cent (50%) of Gross Sales (gross sales before returns credits) for the preceding twelve (12) month period, FLHE is also entitled to withhold Pop's inventory as collateral and liquidate it. This reserve is to be applied to such returns and other payments due FLHE for co-op advertising or other charges and the balance liquidated in three equal installments within three (3), six (6), and nine (9) months from termination. However, if Pop appoints a new Bona Fide Distributor and provided such Bona Fide Distributor furnishes a satisfactory returns assumption letter to FLHE and FLHE's accounts as per the above provisions, it is agreed that twenty per cent (20%) of net sales (gross sales less returns) for the preceding twelve (12) month period are deemed a reasonable reserve whereby this reserve is to be applied to returns and other payments due FLHE for co-op advertising or other charges and the balance liquidated in two equal installments within three (3) and six (6) months from termination. In any case, Pop will reimburse FLHE immediately at any time during and after the Term of this Agreement, if a balance is due FLHE from Pop or once FLHE's reserve is used up.

14. **POP'S COPYRIGHT & TRADEMARK OBLIGATION.** Pop hereby agrees that it will promptly undertake to secure and diligently preserve throughout the Distribution Term of this Agreement any and all necessary and proper trademarks, service marks and/or copyright registrations, in the appropriate class or classes, pertaining to the Programs.

15. **REVENUE SHARE ARRANGEMENT**. The parties acknowledge that Pop (as ei Independent Cinema, an affiliate of Pop) provided FLHE (as VDI), prior to this Agreement, with Movies that were placed into the Hollywood Video rental chain via a Revenue Share arrangement between Hollywood Video and VDI, and, subsequently, via written instrument between VDI and ei Independent Cinema (the "Revenue Share Agreement"). The parties further acknowledge that: (i) as of June 19, 2006, Pop had received all past-due "Hollywood Video Revenue Share" Royalty Statements and Payments from FLHE generated by the Movies distributed pursuant to the Revenue Share Agreement; and (ii) Pop is owed additional Royalty Statements and Payments from FLHE for Movies that are still actively generating royalties. As such, FLHE hereby agrees to forward said additional Royalty Statements and Payments to Pop immediately as they become due. Pop hereby acknowledges that FLHE has the right to sell the Finished Goods products into the FLHE's rental accounts and the reporting and payments shall be detailed in an amendment to this Agreement.

16. **GENERAL PROVISIONS.**

16.1 **Amendments.** This Agreement cannot be amended, modified or changed in any way whatsoever,except by a written instrument duly executed by both parties hereto, and this Agreement supersedes all prior written or oral agreements, statements or representations.

16.2 **Full Integration/Final Contract.** This Agreement contains the exclusive terms and conditions which apply to all purchases, notwithstanding any purchase order, acknowledgment or other business forms transmitted by Pop or FLHE, even if such forms do not reference this Agreement or the applicable FLHE



purchase order. Moreover, this Agreement does not constitute a purchase order. Purchases hereunder shall be made only by purchase orders issued by FLHE's purchasing department. FLHE shall be liable under this Agreement only for those Programs covered by such purchase orders. The parties acknowledge and agree that if any terms of this Agreement conflict with any of Pop's invoices or business forms, FLHE's purchase order forms or acknowledgement thereof, the terms and conditions of this Agreement shall govern any purchases made pursuant to this Agreement. This Agreement supersedes all prior oral or written proposals and communications between the parties related to this Agreement, and shall not be modified rescinded, waived or otherwise changed except with the written express consent of the parties.

16.3 **Governing Law.** This Agreement will be construed and interpreted in accordance with the laws of New York. The parties agree that any action related to this Agreement shall be venued in the New York City Courts or the United States District Court, Southern District of New York.

16.4 **Relationship of the Parties.** Nothing herein will be construed to create a joint venture or partnership by or between Pop and FLHE so as to make either party hereto an agent or partner of the other. Neither party will become liable or bound by any representation, act, omission or agreement of the other which is contrary to the provisions of this Agreement.

16.5 **Payments.** All statement and payments rendered pursuant to Paragraph 9 will be sent to the parties, at the address set forth in Paragraph 16.6.

16.6 **Notices.** All notices hereunder will be in writing and sent by certified or registered mail (return receipt requested), telecopier (with oral confirmation), or messenger (with receipt of delivery) to the addresses set forth below:

To FLHE: FIRST LOOK HOME ENTERTAINMENT, INC.
2000 Avenue of the Stars, Suite 410
Century City, CA 90067
Attn: Richard Shore, Esq.
Ph: 424-202-5000
Fax: 424-202-5310

To Pop: POP CINEMA, LLC
10 Park Place, Bldg 6-A, 2nd Floor
Butler, NJ 07405
Attn: Michael Raso
Ph: (973) 838-3030
Fax: (973) 492-8988
Email: popcinema@aol.comTax Id No: 22-355-2625

Any such notice or approvals sent hereunder will be deemed served or received upon delivery, except notices sent by telecopier, which will be deemed delivered when sent. Each party may designate in writing such other place or places that notices may be given hereunder; provided, however, that any notice of change of address will only be effective upon actual receipt thereof by the other party.

16.7 **Headings & Captions.** Article and paragraph headings and captions, as used in this Agreement, are for convenience only and are not a part hereof, and will not be used to interpret any provision of this Agreement.

16.8 **General Interpretation.** The terms of this Agreement and the words used herein will be deemed to be the language chosen by the parties hereto to express their mutual intent. Therefore, this Agreement will

be construed without regard to any presumption or rule requiring construction against the party causing the Agreement or any portion thereof to be drafted, or in favor of the party receiving a particular benefit under this Agreement.

16.9 **Assignment.** Except for financial proceeds to be paid hereunder, Pop shall not have the right to assign or transfer this Agreement to any third party without the written consent of FLHE; provided however, that Pop shall be entitled to assign or transfer as part of a merger, consolidation, or purchase or sale of substantially all of Pop's assets. FLHE shall have the right to assign, transfer or convey all or any part of FLHE's rights and obligations under this Agreement and to license others to exploit all or any part of the foregoing rights granted to FLHE; provided, however, that FLHE shall remain secondarily liable.

16.10 **Integration.** This Agreement, together with any exhibits and schedules, is entire and complete, and no representations, warranties, agreements or covenants, express or implied, of any kind or character whatsoever have been made by either party to the other except as expressly set forth in this Agreement. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof.

16.11 **Severability.** In the event that any provision in this Agreement will be held invalid or unenforceable, such provision will be severable from, and such invalidity or unenforceability will not be construed to have any effect on, the remaining provisions of this Agreement.

16.12 **Waiver.** The failure by either party, at any time, to require performance by the other party of any of the provisions hereof will not be deemed a waiver of any kind nor will it in any way affect the waiving party's rights thereafter to enforce the same.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first written above.

| **FLHE HOME ENTERTAINMENT, INC.** | **POP CINEMA, LLC** |
|---|---|
| By: [signature] | By: [signature] Michael Raso |
| Title: ~~CAO & General Counsel~~ President FLHE | Title: President |
| Executed: 2/13/07 | Executed: 1/29/2007 |

**EXHIBIT "A"**
**SCHEDULE OF PROGRAMS**

The following Programs are the titles that are to be sold and distributed by Distributor pursuant to this Agreement. This list shall be updated with any other works, videos or programs controlled, acquired, developed, owned, adapted, licensed, produced, made, created, composed, written or financed by Vendor during Term of this Agreement, or any extensions thereof as agreed to by the parties.

**EI INDEPENDENT CINEMA TITLES**

| |
|---|
| 2069: A Sex Odyssey/Run Virgin Run Double Feature DVD |
| Abigail Leslie is Back in Town DVD |
| Bikini Girls on Dino Planet DVD |
| Blazing Stewardesses DVD 2-Disc Set |
| Caligula Reincarnated/White Slave DVD |
| Cinderella 2000 |
| Crimson Nights DVD |
| Curious Obsessions DVD |
| Darian Caine My Pleasures DVD TW excl. (soft version) |
| Demon Sex DVD |
| Devil's Plaything DVD |
| Dr. Jekyll and Mistress Hyde DVD |
| Erotic Mirror Collector's DVD, The |
| Erotic Survivor Collector's DVD |
| Feeding the Masses DVD |
| Girl Seduction DVD |
| Girl Who Shagged Me, The DVD Unrated |
| Girl Who Shagged Me, The DVD MPAA R |
| Gladiator Eroticus Collector's DVD |
| G-String Vampire DVD |
| Inga Collector's DVD |
| Joseph Sarno "Girl Meets Girl" Trilogy 4-Disc DVD |
| Laura's Toys DVD |
| Lord of the G-Strings DVD (unrated) |
| Lust Connection DVD |
| Lust for Dracula DVD Unrated |
| Lust for Dracula DVD MPAA R |
| Lust for Frankenstein/Tender Flesh 2-DVD Dble. Feature |
| Lustful Addiction DVD |
| Lust in Space DVD |
| Lust in the Mummy's Tomb DVD |
| Misty Mundae Euro-Vixen 3 DVD Collection |
| Misty's Secret DVD |
| Mummy's Kiss DVD |
| My Vampire Lover DVD |



| Naughty Fairy Tales DVD |
|---|
| Naughty Nudes of the 1960s DVD |
| Nude Cardiovascular/College Co-EdsCollector's DVD |
| Play-Mate of the Apes Collector's DVD |
| Pleasures of a Woman DVD |
| Poetic Seduction DVD |
| Prison-A-Go-Go DVD |
| Roxanna Collector's Edition DVD |
| Satan's Black Wedding/Criminally Insane DVD |
| Satan's School for Lust DVD |
| Seduction of Inga DVD |
| Seduction of Misty Mundae DVD |
| Sexual Confessions Double Feature DVD |
| Sin Sisters DVD |
| Slave Girls on Auction Bl. 1313 DVD (TransWorld excl) |
| Slime City DVD |
| SpiderBabe DVD 2-Disc Collectors (Unrated) |
| SpiderBabe DVD MPAA R |
| Suburban Secrets MPAA R DVD (rental only) |
| Suburban Secrets Unrated 2-Disc Set DVD |
| Swedish Wildcats DVD |
| Uschi Digard Buxom Bombshell Collection DVD |
| Vampire Vixens DVD |
| Vamps 2: Blood Sisters 2 Disc DVD |
| Wicked Sister DVD (R-rated version of Sin Sisters) |
| Witches of Breastwick DVD |
| Womens Prison Massacre DVD |



**EXHIBIT "B"**
**DELIVERY REQUIREMENTS**

**Orders, Shipment and Delivery of Programs**

a) Distributor shall issue orders in writing (which included facsimile transmission) or verbally (which must be confirmed in writing.)

b) Supplier shall deliver all Programs ordered by Distributor within the time agreed to, which shall not in any event be later than ten (10) working days after receipt of Distributor's orders, subject to the provisions of paragraph 3.

c) All Programs shall be shipped freight paid, F.O.B. Destination. Distributor's price includes freight to Distributor's facility.

d) Distributor may cancel all or part of any order prior to the date of shipment.

e) A packing list showing Distributor's purchase order number, quantity ordered, quantity shipped and identification of the Programs must accompany all shipments.

f) Distributor has the right to charge back to Supplier any costs or penalties incurred by Distributor or its Dealers due to Supplier's failure to deliver, late shipments or improperly shipped and packaged cartons.

g) Supplier shall ensure that all Programs shall bear a UPC-A part code on the product slip case. All shipping cartons shall have a label that includes the following information: Product title, Format (VHS or DVD), UPC-A bar code and master carton quantity. The UPC numbers and codes on Programs and shipping cartons shall conform to the Uniform Code Council, National Office Programs Association and Retail Industry Standards.

*Packaging*

1. All cartons must be packaged securely to protect the Programs from forward and lateral movement. All cartons must be constructed of recyclable corrugated cartons and conform to National Motor Freight Classifications.

2. All Programs must be individually shrink-wrapped.

3. Standard carton dimensions are as follows:

   DVD – 18 x 7 x 5 ½
   VHS – 20 x 12 x 8
   VHS Clam – 20 x 12 x 8

Less than full case cartons should be marked as "partial." If multiple less than full case quantities are on one PO the mixed carton should be marked "Mixed Titles."

4. Ship one purchase order per carton. **Do not mix PO numbers in cartons.**

5. UPC barcodes must be placed on the top right of the back cover on each DVD and VHS case. (See the Product Preparation section.).

6. All DVD's must have a Sensormatic Tag placed inside the Alpha or Amray case on the opposite side of the UPC barcode. A Mylar spine label must be placed on the top, bottom, and side of the DVD case as added security. Please contact our Production Manager at (805) 498-7800 x240 for any questions regarding security compliance.

7. The industry and Distributor accepts the following as the standard full case pack (FCP) quantities:

| | |
|---|---|
| Video | FCP = 50 units per carton |
| Video (clamshell) | FCP = 30 units per carton |
| DVD | FCP = 30 units per carton |

We have the right to refuse non-compliant shipments.

Shipment of less than master carton quantities must be placed in cartons that are consistent for the items.

***Labels***

1. A carton label must be placed on each end of the carton.
2. The carton label must contain the following information:
   - Full Case Pack (FCP) quantity
   - UPC barcode
   - Configuration (DVD or VHS)
   - Title

For non-pallet multiple carton shipments, FedEx or UPS, please mark each box with a sequential carton number, for example, "Box 1 of 5." The size of the carton label should be at least 4" x 4."

***Shipping***

1. All shipments are prepaid by Supplier, FOB shipper.

2. All pallet shipments must be wrapped with stretch film. Each pallet must be secure and cartons protected.

3. Pallets must be no more than 50" high including pallet. (See last page for pallet stacking instructions).

4. Pallets must not be damaged.

5. Pallets must be standard 42" wide by 48" long.



6. One packing slip per purchase order must be included with the shipment. The packing slip must be legible and in English.

7. The packing slip must be placed in a clearly marked pouch ("packing slip enclosed") or envelope on the outside of one carton.

8. The packing slip must match the contents of the shipment, including partial shipments.

9. A packing slip for non-pallet shipments, FedEx or UPS, must be included (see item 5) in each carton.

10. Label each pallet with our PO number and the number of the pallet within the PO number. For example, 1 of 8, 2 of 8, etc.

11. All Suppliers' carriers must call our receiving department to make a delivery appointment at least 24 hours in advance. Please call (805) 498-7800 between 8 AM and 4 PM Monday through Friday. *Trucks arriving without a delivery appointment could be turned away at shipper's expense.* Distributor will not be responsible for any appointment delivery fees.

**Product Preparation**

All merchandise shipped to Distributor Distribution must include a scanable UPC barcode label. The UPC code must be visible and easily accessible for scanning. UPC must adhere to the following guidelines:

- Standard UPC barcode consistent with UCC guidelines.
- Place UPC on the **back** or sleeve or jewel case, in the upper right hand corner
- Do not place UPC under cassette seam or on jewel case hinge

Please contact our production manager, regarding any questions about UPC standards and placement.

**Unordered Merchandise**

Unauthorized substitution, invalid orders, cancelled orders, early shipments, past cancellation date shipments, over-shipments and duplicate shipments may be shipped back to the Supplier. Distributor retains the rights to reroute these types of shipments through a specified carrier to be delivered back for disposition at Supplier expense as freight collect.

In the event that unauthorized merchandise is received, a per carton expense offset will be charged. If unordered merchandise is not accepted, a per carton expense offset will be charged in addition to 5% of the return value, plus transportation.

**Consolidated Returns**

Distributor has a central returns facility and will make every effort to consolidate return shipments to Suppliers.

**Defective/Un-saleable Returns**

Merchandise that is deemed to be substandard by Distributor will be returned to the Supplier, FOB origin freight collect.

**PACKING SLIP REQUIREMENTS**

**Shipping Direct to Distributor**

Packing slips must prepared in the following manner:

- Prepare one packing slip per shipment.
- If a single PO is spread across multiple shipments, each shipment must contain a packing slip with a separate packing slip number.
- Insert packing slips into a removable pouch.
- If routing dictates that the order is to be shipped via UPS, Fed Ex Ground or express (parcel) carrier, a packing slip is required to be placed in carton #1 and the carton should be marked "Packing Slip Enclosed".
- If you ship full trailer loads, the packing slips should be placed on the last skid to be loaded on the truck for easy access at our dock.
- If shipping LTL, the #1 carton should have the packing slip affixed in an envelope and if multiple skids, skid #1 should have packing slip affixed in an envelope.

The packing slip must travel with the product and represent the items to be included on the related invoice. The packing slip must be legible and in English. For all suppliers, the packing slip should contain the following information:

1. Your company name and address
2. Invoice number – preferred but not required.
3. Distributor's P.O. number.
4. Ship date.
5. Quantity shipped per item – should be consistent with purchase order UOM.
6. Unit of measure – must be always "each."
7. Complete UPC number.
8. Item description – must include detailed descriptions such as sub-titled or letter box versions of VHS.
9. Packing slip number – limited to 8 digits. This number must appear on invoices also.
10. Total quantity of all line items.

Do not include your invoices with the shipment or attached to the packing slip. All invoices should be sent by mail or electronically to our accounts payable department.

**EXHIBIT "C"**
**CUSTOMER EXCLUSIONS**

Newbury Comics
TLA
DVD Empire
Diamond Comics
Movies Unlimited
Rentrak
Alternative Cinema
Amazon.com



January 22, 2007

POP CINEMA, LLC
10 Park Place, Bldg 6-A, 2nd Floor
Butler, NJ 07405
Attn: Michael Raso

**Re: <u>Amendment # 1 to the Exclusive Distribution Agreement dated July 28, 2006.</u>**

Dear Michael:

Reference is hereby made to that certain Exclusive Finished Goods Distribution Agreement (**"<u>Agreement</u>"**) made and entered into as of the 28th day of July 2006 and effective as of the 21st day of March, 2006 **("Effective Date")**, by and between First Look Home Entertainment, Inc., a California corporation (**"<u>FLHE</u>"**), and Pop Cinema LLC, a New Jersey corporation (**"<u>Pop</u>"**).

The Agreement shall hereby be amended as follows:

1. Pop hereby affirms that FLHE shall have the exclusive right to promote, market and sell, distribute and otherwise exploit the Programs in all the rental accounts and markets.

2. Pop shall receive Seventy-seven and one-half percent (77.5%) of Revenue Share Royalty and FLHE shall receive Twenty-two and one-half percent (22.5%) of the Revenue Share Royalty.

3. The Revenue Share Royalty shall mean all monies actually received by FLHE from the distribution of the Program into the rental accounts, less any actual and verifiable costs incurred by FLHE in its distribution of the Programs into the rental accounts.

4. FLHE shall report to Pop on a monthly basis, the sales activity for the rental accounts and FLHE shall pay Pop their Revenue Share Royalty within thirty (30) days of each report.

5. Except as specifically modified or amended by the terms of this Amendment, the Agreement and all provisions contained therein are, and shall continue, in full force and effect and are hereby ratified and confirmed.

6. This Amendment shall be binding upon all the parties to the Agreement and their respective successors and assigns. This Amendment shall be governed by, and construed and enforced in accordance with, the internal laws in effect in the State of California.

7. For purposes of clarity, FLHE shall not deduct from Revenue Share Royalty hereunder credits that it may be able to take for authorized returns under Paragraph 10.1 of the Agreement.

| **FLHE HOME ENTERTAINMENT, INC.** | **POP CINEMA, LLC** |
|---|---|
| By: [signature] | By: [signature] Michael Raso |
| Title: ~~CAO & General Counsel~~ President, FLHE | Title: President |
| Executed: 2/13/07 | Executed: 1/29/2007 |